UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SEA ISLAND COMPANY, *et al.*, | ) | |
| | ) | Case No. 10-21034 - EJC |
| | ) | Jointly Administered |
| Debtors, | ) | |
| | ) | |
| | ) | |
| SEA ISLAND ACQUISITION, LLC, *et al.*,[1] | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | |
| ROBERT H. BARNETT, as Trustee of the | ) | Case No. 18-02012 - EJC |
| SEA ISLAND COMPANY CREDITORS | ) | |
| LIQUIDATION TRUST, | ) | |
| | ) | |
| Defendant. | ) | |

**LIQUIDATION TRUSTEE'S RESPONSE IN OPPOSITION
TO THE MOTION FOR PRELIMINARY INJUNCTION**

Robert H. Barnett as the Liquidation Trustee (the "Liquidation Trustee") under the Sea

Island Company Creditors Liquidation Trust (the "Liquidation Trust") files the Liquidation

Trustee's Response in Opposition to the Motion for Preliminary Injunction [Adv. Docket No. 7]

(the "Motion") and respectfully shows the Court the following:

**INTRODUCTION**

On December 15, 2015, this Court ordered that:

*[U]nless the Liquidation Trustee consents in writing*, SIA and its affiliates are
hereby **barred** from (i) *assigning, transferring, or conveying SIA's Asserted
Contested Matter Rights* (as that term is defined in the Settlement Agreement) to
any entity (as that term is defined in the Bankruptcy Code). (ii) contesting or

---

[1] The plaintiffs in this adversary proceeding are: Sea Island Acquisition, LLC ("SIA"), Sewers and
Wells, LLC, Maintenance Facility, LLC, Laundry Services, LLC, Rainbow Hammock, LLC, SIA
Propco I, LLC, SI Tract V, LLC, SI Parcel OCG, LLC, and SSI Parcel OS, LLC.

opposing in any way the relief the Liquidation Trustee seeks or positions lie asserts in the Contested Matter and (iii) contesting or opposing in any way the relief the Liquidation Trustee seeks or *positions he asserts in any case, proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court with respect to SIA's Asserted Contested Matter Rights*; and it is

[Doc. No. 1450, p. 2]  (the "SIA Consent Injunction") (emphasis added).  Nearly three years after entry of the SIA Consent Injunction, more than three years after SIA and the Liquidation Trustee reached the underlying settlement and the Court initially approved the settlement agreement [Doc. No. 1411], almost a year since SIA has been on notice—by virtue of the Liquidation Trustee's motion to approve his decision to extend the duration of the trust—that he asserts that the SIA Consent Order grants expansive injunctive relief [Doc. No. 1742],  and more than four-and-a-half months after the Liquidation Trustee approached Plaintiffs about the SIA's Asserted Contested Matter Rights including all Purchased Assets under the Asset Purchase Agreement, Plaintiffs now seek an injunction from enforcement of the plain terms of the Court's order and underlying settlement agreement.

As shown herein, Plaintiffs—in their thinly-veiled attempt to circumvent the fact that they failed to timely object to, appeal, or seek relief pursuant to Fed. R. Civ. P. 60(b) from the SIA Consent Injunction—have wholly failed to demonstrate that they are entitled to a preliminary injunction.  Plaintiffs, who are sophisticated entities that performed thousands of hours of diligence related to the underlying bankruptcy sale and settled in order to avoid protracted and expensive litigation, years later, claim that "[n]o reasonable owner of a business" would enter into such a settlement agreement. Motion, p. 30. Plaintiffs' labored (and incorrect) construction of the plain terms of the settlement agreement and the SIA Consent Injunction do not support *any* likelihood of success on the merits of their claims, let alone the *substantial* likelihood required to justify a preliminary injunction. Likewise, Plaintiffs fail to carry their burden to show actual, imminent,

2

irreparable harm arising from Liquidation Trustee asserting his position with respect to SIA's Asserted Contested Matter Rights. Plaintiffs have also failed to demonstrate that the purported threat to them outweighs the harm to the Liquidation Trustee and Liquidation Trust. Moreover, as shown below, based upon the circumstances presented in this case, the preliminary injunction sought by Plaintiffs would contravene public policy.

## FACTUAL & PROCEDURAL BACKGROUND

### A.    The Bankruptcy and the Asset Purchase Agreement

Sea Island Company and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Sea Island Acquisition, LLC ("SIA")[2]was formed by Oaktree Capital Management L.P. ("Oaktree") and Avenue Capital Group ("Avenue Capital")for the purpose of purchasing substantially all of the assets of the Debtors in the Bankruptcy. *See* Doc. No. 154-1[3] at ¶ 1.

SIA is a self-described "sophisticated and well-informed investor." *See* Doc. No. 154 at ¶ 22. Before entering into the Asset Purchase Agreement, SIA acknowledges that it "thoroughly vetted" the "Debtors' assets and liabilities." *See*. Doc. No. 154 at ¶ 12. "In the months leading up to the execution" of the Asset Purchase Agreement, SIA "engaged in extensive due diligence involving many thousands of hours on the part of [SIA] and its advisors." *See* Doc. No. 154 at ¶ 12.SIA retained Debevoise & Plimpton LLP ("Debevoise") a leading international law firm

---

[2] SIA was formerly Sea Island Acquisition, LP, and this is how it refers to itself in the Motion to Clarify (defined below).

[3] As set forth in more detail below, citations to Doc. No. 154 are to a memorandum SIA filed in support of the debtors' request to approve a break-up fee for SIA as the stalking horse purchaser in the amount of $5,925,000.00. Citations to Doc. No. 154-1 are to a supporting declaration signed under penalty of perjury by Phillip Hoffman, who was then a Managing Director of Oaktree Capital Management L.P., one of the entities that formed SIA. As reflected in the declaration, Mr. Hoffman is authorized to submit the declaration on SIA's behalf. *See* Doc. No. 154-1.

4819-5193-0745, v. 1

headquartered in New York City[4] in connection with its purchase of substantially all of the Debtors' assets.

SIA engaged Debevoise to "advise it in connection with the sale process and to coordinate the review over 1,250 documents in the electronic data room.  Given the scope of these documents, Debevoise attorneys with expertise in various disciplines including real estate, employee benefits, environmental, intellectual property and tax participated in this review.  These specialists, along with members of [SIA's] internal business team, also spent substantial time with the Company's management and advisors discussing issues and following up on questions raised as part of the review."  *See* Doc. No. 154-1 at ¶ 18.

In addition to Debevoise, SIA retained the law firm of Hunter Maclean Exley & Dunn PC ("Hunter Maclean") to serve as real estate counsel[5] and co-counsel in the bankruptcy cases.[6]  As "one example of the tremendous time and resources involved in the diligence process," Hunter Maclean—"leading up to the execution of the Sale Agreement"—among other things, "review[ed] …thousands of pages of complex title and survey documents for over 50 individual properties;…reviewed…multiple title commitments (over 200 pages in length) and endorsements;…reviewed…extensive condominium declarations and filings."  *See* Doc. No. 154-1 at ¶ 20.

On August 4, 2010, SIA and the Debtors "entered into" the Asset Purchase Agreement [Doc. No. 24-1] (the "Sale Agreement").  *See* Doc. No. 154-1 at ¶ 15.  But "[e]ven after executing the Sale Agreement, [SIA] continue[d] to conduct substantial due diligence…  [SIA]'s local real

---

[4]  Click here  https://www.debevoise.com/aboutus/overview  for the "About Us" page on Debevoise's website.   Click here  https://www.debevoise.com/aboutus/recognitions  for the "Recognition" page on Debevoise's website.
[5]  *See* Doc. No. 154-1 at ¶ 18.
[6]  *See* Doc. No. 7.

4819-5193-0745, v. 1

estate counsel...work[ed] toward finalizing the title commitment and endorsement, preparing surveys, coordinating containment letters and zoning letters, and preparing for the transfer of alcohol licenses and other permits." *See* Doc. No. 154-1 at ¶ 24.

On August 10, 2010, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Shortly thereafter, Debtors filed the sales procedures motion [Doc. No. 24] (the "Sales Procedures Motion") in which the Debtors requested, among other things, that the Court approve a break-up fee for SIA as the stalking horse purchaser in the amount of $5,925,000.00. *See* Sales Procedures Motion at ¶¶ 32-38. In the memorandum SIA filed in support of the Debtors' request for the Court to approve the $5,925,000.00 break-up fee, SIA states the following: "[O]ther bidders will be more encouraged to participate in the Debtors' auction knowing that the Debtors' assets and liabilities have been so thoroughly vetted by a sophisticated and well-informed investor." *See* Doc. No. 154. SIA Break-up Fee Memorandum ¶ 22.

"[T]he Debtors conducted an auction on October 11, 2010 (the 'Auction'), at which the Debtors solicited the highest and best bid for the sale of substantially all of the Debtors' assets." *See* Plan Supplement [Doc. No. 294] at ¶ 1. "At the Auction, [SIA] . . . and Sea Island Holdings, LLC, a limited liability company formed by the Anschutz Corporation and Starwood Capital Group, each submitted multiple bids for the Debtors' assets." *See* Plan Supplement at ¶ 1. "After multiple rounds of bidding by each group, the two groups reached an agreement to jointly purchase the Company's assets (the 'Joint Bid') and the Debtors, in consultation with the Secured Lenders and the Committee, determined that the Joint Bid was the highest and best bid for the sale of substantially all of the Debtors' assets." *See* Plan Supplement [Doc. No. 294] at ¶ 1.

Accordingly, as of October 19, 2010, the Debtors and SIA entered into the Asset Purchase Agreement by and among Sea Island Acquisition LP, Sea Island Company, Sea Island Coastal

Properties LLC, Sea Island Resort Residences, LLC, First Sea Island, LLC, Sea Island Apparel, LLC and Sea Island Services, Inc. [Doc. No. 293] (the "Asset Purchase Agreement").

**B.     After the Asset Purchase Agreement SIA Files its Motion to Clarify Asserting "All Interests and Property of the Debtors."**

On March 18, 2014,[7] SIA filed the Motion to Clarify Provisions Relating to Implementation of the Confirmed Plan [Doc. No. 1102] (the "Motion to Clarify").  Through the proposed order,[8] SIA requests a declaratory judgment that it bought "***all*** interests and property of Debtors."[9]  *See* Doc. No. 1102 *32 of 35 (emphasis added).  Indeed, at the ***April 10, 2014*** status conference hearing, the Court had no trouble concluding that SIA was requesting a ruling that it bought all of the Debtors' property that had "anything to do with" real property.  *See* Status Hearing April 10, 2014, *9:17-18.[10]

---

[7]  This was one day after the deed to secure debt was filed for the refinancing with Metropolitan Life Insurance Company.  *See* Glynn County Superior Court Clerk's Office, Book 3284 Page 496.

[8]  In the Motion to Clarify, SIA requests, among other things, the Court to enter the proposed order attached as Exhibit "Three."  *See* Doc. No. 1102 at 5 of 35; *see also* Fed. Bankr. P. 9013 ("The motion . . . shall set forth the relief or order sought.")

[9]  In the Motion to Clarify, SIA requests that the Court enter a proposed order including, among other things, the following declaratory judgment: "FURTHER ORDERED, that ***all interests and property of Debtors*** not identified as an Excluded Asset, as provided above, were sold to Sea Island Acquisition, LLC under the Asset Purchase Agreement."  *See* Doc. No. 1102 *32 of 35 (emphasis added).

[10]  Specifically, the Court said the following:

> I understand that reading this they want some sort of broad order
> that says if it has anything to do with real estate it got sold, and I
> don't think you are going to get that from me on this one.  If a
> problem comes up like this where you need that resolution on a case
> by case basis then I think you are going to have to come back and
> ask for that clarification because somehow I got that from this. You
> want this determination from me somehow a broad-sweeping order
> that takes all of this interest/any potential interest like this out of the

Still concerned with the scope of relief SIA sought in the Motion to Clarify, the Liquidation Trustee subsequently requested that SIA admit that it is "not seeking a ruling from the Court in the Motion to Clarify as to any real estate interests other than those specifically set forth in the Motion to Clarify."[11] SIA responded on *June 30, 2014*—over two months after the judge's statements at status conference —SIA denies the request to admit and states that it "seeks a ruling from the Court that *all assets of the Debtors not expressly excluded by the Asset Purchase Agreement* were sold to SIA and should be transferred to SIA."[12]

## C.   The Liquidation Trustee and SIA Entered Into a Settlement Agreement.

SIA and the Liquidation Trustee entered into a settlement agreement as of August 19, 2015 [Doc. No. 1409] (the "Settlement Agreement").  James B. Gilbert, Jr. ("Gilbert") —who is now of counsel at the law firm of Gilbert, Harrell, Summerford & Martin P.C. ("Gilbert Harrell")— executed the agreement on behalf of SIA as its general counsel.  *See* SIA Settlement Agreement *17.

At the heart of the Settlement Agreement is the defined term "SIA's Asserted Contested Matter Rights."  It is defined in paragraph one of the Settlement Agreement:

> 1.   <u>Agreement Not to Contest.</u>   SIA on its behalf and behalf of all of its affiliates hereby covenants and agrees that it will not contest or oppose directly or indirectly in any way the relief the Liquidation Trustee

---

hands of the liquidating trustee and I don't think I am going to be prepared to do that.

Status Hearing April 10, 2014, *9:15-25.

[11] *See* SIA's Amended Responses to Requests for Admission Propounded by Robert H. Barnett, Liquidation Trustee Under the Sea Island Liquidation Trust, Response No. 15.

[12] *See* SIA's Amended Responses to Requests for Admission Propounded by Robert H. Barnett, Liquidation Trustee Under the Sea Island Liquidation Trust, Response No. 15 (emphasis added).

4819-5193-0745, v. 1

seeks in the Contested Matter[13] or in any case, proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court with respect to **all rights SIA asserts in the Motion to Clarify or otherwise in the Contested Matter including, but not limited to, the Reserved Interests** (as that term is defined on page three of the Motion to Clarify) (**all such rights** shall be collectively referred to as the "**SIA's Asserted Contested Matter Rights**");

Settlement Agreement ¶ 1 (emphasis added).

As set forth in the Liquidation Trustee's motion to approve the Settlement Agreement, "SIA insisted on a carve out[14] for [Kings Point Property Owners Association, Inc.] with respect to the Common Areas (as that term is defined in the Settlement Agreement)." *See* Doc. No. 1409, n.2. As a result, immediately following the quotation above, the Settlement Agreement states the following:

> [F]or the avoidance of doubt, SIA's Asserted Contested Matter Rights shall not include the Common Areas (as that term is defined in the Settlement Agreement), and nothing in the Agreement shall prejudice the rights of [Kings Point Property Owners Association, Inc.] or the Liquidation Trustee with respect to the Common Areas.

Settlement Agreement ¶ 1. In the Settlement Agreement, SIA "on its behalf and on behalf of all of its affiliates hereby covenants and agrees that it will not assign, transfer, or convey the SIA's Asserted Contested Matter Rights to any entity (as that term is defined in the Bankruptcy Code)."[15] *See id.* SIA also "represents and warrants that it has not transferred or assigned SIA's Asserted Contested Matter Rights in any way whatsoever, "[e]ach Party acknowledges that the other Party

---

[13] The "Contested Matter" is broadly defined in a recital on page 2 of the Settlement Agreement. *See* Settlement Agreement *2 ("The contested matter initiated by the Motion to Clarify along with the Liquidation Trustee's Preliminary Response, the Kings Point POA Preliminary Response, and the pleadings involving standing that resulted in the Standing Order shall be referred to collectively as the '**Contested Matter**.'") (emphasis added).

[14] A "carve out" is an "explicit exception to a broad rule." *See* BLACK'S LAW DICTIONARY 243 (10th Ed. 2014).

[15] The Bankruptcy Code has a very broad and all-inclusive definition of the word "entity." *See* 11 U.S.C. § 101(15).

is *justifiably relying to its detriment* on the representations and warranties of the other Party." *See id.* ¶ 6 (emphasis added).

The Settlement Agreement expressly provides that it is "subject to the entry of an order by the Bankruptcy Court approving" such agreement. *See* Settlement Agreement ¶ 8. The agreement further provides that such order "shall, among other things, do the following: (i) approve the Settlement Agreement; and (ii) declare that SIA has not transferred, assigned or encumbered SIA's Contested Matter Rights (which specifically excludes the Common Areas as described in Paragraph 1 above) in any way whatsoever." *See id.* With respect to such order, SIA further "covenants and agrees to support, and shall not in any way contest or oppose, the Liquidation Trustee requesting the entry of" such order. *See id.*

**D.      SIA Objects and Then Consents to the Injunction.**

On October 16, 2015, the Liquidation Trustee filed a motion [Doc. No. 1409] (the "SIA 9019 Motion") requesting that the Court approve the Settlement Agreement and grant certain other relief in a proposed order.[16]   On October 19, 2015, the Court entered the proposed order "subject to a party in interest filing a written objection with the Court." *See In re Sea Island Co.*, Doc. No. 1411, *1 (Bankr. S.D. Ga. Oct. 19, 2015) (the "Negative Notice 9019 Order").

The Negative Notice 9019 Order granted the following relief:

- "Approve[d] and authorize[d]" the Settlement Agreement "in all respects;"

- "[T]he Settlement Agreement is adopted and incorporated in its entirety" into the Negative Notice 9019 Order "by reference;"

- Enjoined "SIA and its affiliates . . .  from (i) assigning, transferring, or conveying SIA's Asserted Contested Matter Rights to any entity (as that term is defined in the Bankruptcy Code), (ii) contesting or opposing in any way the relief the Liquidation

---

[16] The proposed order is attached as Exhibit "B" to the SIA 9019 Motion and can be found at Doc. No. 1409 at 19 of 21 through 21 of 21.

Trustee seeks or positions he asserts in the Contested Matter, and (iii) contesting or opposing in any way the relief the Liquidation Trustee seeks or positions he asserts in any case, proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court with respect to SIA's Asserted Contested Matter Rights;" and

- Made a declaratory judgment that "neither SIA nor its affiliates have assigned, transferred, conveyed, or encumbered SIA's Asserted Contested Matter Rights in any way…"

Negative Notice 9019 Order ** 1 & 2.

SIA filed an objection [Doc. No. 1417] (the "SIA 9019 Objection") for the stated reason that the declaratory judgment in the Negative Notice 9019 Order—that "neither SIA nor its affiliates have assigned, conveyed, or encumbered SIA's Asserted Contested Matter Rights in any way"[17]—might run afoul of the "quitclaim deed" from SIA to Kings Point POA. *See* SIA 9019 Objection ¶ 6[18] (emphasis added). SIA argued that—while the Settlement Agreement "specifically excludes the Common Areas of the Kings Point Subdivision from the Asserted Contested Matter Rights addressed in the Settlement Agreement"—the Negative Notice 9019 Order "does not specifically recognize such exclusion and could, therefore, result in conflict or ambiguity." *See* SIA 9019 Objection ¶ 6.

SIA's stated reason for the objection ignores the fact that—pursuant to the express terms of the Negative Notice 9019 Order—the "Settlement Agreement is adopted and incorporated in its entirety" into such order "by reference." *See* Negative Notice 9019 Order *2. So the definition of SIA's Asserted Contested Matter Rights (along with the carve out for the Common Areas) would have been "incorporated in [its] entirety" into the order mooting the stated reason for the objection. Instead of proposing a "carve out" for the Common Areas in the order, SIA proposes

---

[17] *See* Negative Notice 9019 Order *2.
[18] Kings Point POA and Bank of the Ozarks also filed objections. *See* Doc. Nos. 1419 & 1418. Such objections along with the SIA 9019 Objection shall be collectively referred to as the "Objections."

that the "Order should be amended to simply accept and approve the Settlement Agreement"[19] even though such proposal was in violation of the Settlement Agreement because SIA agreed that the injunction would contain a declaratory judgment.[20]

After a fair amount of negotiations, SIA consented to the entry of the proposed consent order. The Court subsequently entered the order, which contains, among other things, the injunction that gives rise to this dispute [Doc. No. 1450] (the "SIA Consent Injunction").

## ARGUMENT & CITATION TO AUTHORITY

### A.  Requirements for a Preliminary Injunction.

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotations and citations omitted); *see also Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944) ("The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff."). "Courts are obligated to be highly circumspect throughout this process to ensure that injunctive relief 'is drafted in light of what the court believes will be the ***future*** course of events, so that its order is not used to serve injustice.'" *Musselman v. Blue Cross & Blue Shield of Alabama*, 684 F. App'x 824, 831 (11th Cir. 2017) (*quoting Salazar v. Buono*, 559 U.S. 700,

---

[19] *See* SIA 9019 Objection ¶ 7.

[20] *See* SIA Settlement Agreement ¶ 8 (SIA "covenanted and agreed to support, and shall not in any way contest or oppose, the Liquidation Trustee requesting the entry of an order by the Bankruptcy Court" that "declared that SIA has not transferred, assigned or encumbered SIA's Contested Matter Rights (which specifically excludes the Common Areas as described in Paragraph 1 above) in any way whatsoever.")

4819-5193-0745, v. 1

714–15. (2010)) (emphasis added).

Moreover, "[i]n this Circuit, preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotations and citations omitted); *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) ("We begin our analysis with the unremarkable observation that a preliminary injunction in advance of trial is an extraordinary remedy."); *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001); *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1424 (11th Cir. 1995). The burden of persuasion in all of the four requirements is at all times upon the plaintiff. *See, e.g., Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (hereinafter "*Jacksonville*"); *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983).

The four prerequisites for a preliminary injunction are the following: (1) that there is a substantial likelihood plaintiff will prevail on the merits; (2) that there is a substantial threat plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *See Suntrust Bank*, 252 F.3d at 1166. As shown herein, Plaintiffs have not made—and cannot make—such a showing.

**B.      Plaintiffs Have Failed To Demonstrate Substantial Likelihood Of Success On The Merits.**

"[T]he fixed principle in the preliminary injunction context is that the proponent of such an injunction must always make the ***prima facie*** showing of substantial likelihood of success on the merits." *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 265 F.3d 1193, 1202 (11th Cir. 2001); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1325 (S.D. Fla.

12

2015) ("To establish a substantial likelihood of success on the merits, a plaintiff must demonstrate a likelihood of success at trial as to both its prima facie case and the affirmative defenses asserted by the defendant."). "If there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that he is likely to prevail on the merits is particularly important." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

As a threshold matter, in their lengthy Motion, Plaintiffs wholly fail to identify which cause of action entitles them to the remedy of injunctive relief in the first place. *See*, *e.g.*, *Fastway Moving & Storage, Inc. v. Ugarte*, No. 13-60832-CIV, 2013 WL 3927687, at *3 (S.D. Fla. July 29, 2013) (holding that Plaintiff failed to demonstrate substantial likelihood of success on the merits where "Plaintiff fail[ed] to identify the cause of action upon which he is likely to succeed").[21] *Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. for Nonviolent Soc. Change, Inc.*, No. 1:13-CV-2510-WSD, 2015 WL 2091714, at *4 (N.D. Ga. May 5, 2015). (Rule 7(b)(1) of the Federal Rules of Civil Procedures further "requires motions to 'state with particularlity the grounds for seeking' relief."). For this failure alone, Plaintiffs' motion is insufficient. *See Dial HD, Inc. v. Clearone Commc'ns, Inc.*, No. CV 109-100, 2010 WL 3732115, at *7 (S.D. Ga. Sept. 7, 2010) ("Judges are not like pigs, hunting for truffles buried in briefs."); *In re Sentinel Mgmt. Grp., Inc.*, 398 B.R. 281, 310 (Bankr. N.D. Ill. 2008) (Courts have indicated that they do "not have a duty to research and construct legal arguments available to a party.")

As shown herein, Plaintiffs have failed to even allege a *prima facie* case and cannot

---

[21] *See also United Prescription Servs., Inc. v. Gonzales*, No. 8:06CV1977 T30MAP, 2006 WL 3804728, at *3 (M.D. Fla. Dec. 22, 2006), report and recommendation adopted, No. 8:06-CV-1977-T30MAP, 2007 WL 128845 (M.D. Fla. Jan. 12, 2007) ("At the outset, the plaintiff must rest its demand for such an extraordinary remedy upon a viable cause of action. Namely, for a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim).")

demonstrate substantial likelihood of success on the merits of their claims.

1.      **Plaintiffs' Request that the Court Rewrite the Terms of the SIA Consent Injunction Is Improper.**

The basis for the Plaintiffs claims relate to the plain terms of the Settlement Agreement and SIA Consent Injunction involves contract interpretation.  Plaintiffs ignore Georgia law that requires courts to enforce plain and unambiguous language in contracts and consent injunctions and instead asks the Court to rewrite the Settlement Agreement and the SIA Consent Injunction.

a.      **Rules of Construction**

The parties agree that courts interpret consent orders and consent decrees like contracts. *See* Doc. No. 7, *23.  *FTC v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010) ("[T]he rules we use to interpret a consent decree are the same ones we use to interpret a contract—since a consent decree is a form of contract.").  Under Georgia law, contract terms are construed according to their "usual and common signification." *See* O.C.G.A. § 13-2-2(4).  "Dictionaries supply the plain, ordinary and popular sense," *Henderson v. Henderson*, 152 Ga. App. 846, 847, 264 S.E.2d 299 (1979), and courts frequently turn to BLACK'S LAW DICTIONARY. *See Dodds v. Dabbs, Hickman, Hill & Cannon, LLP*, 324 Ga. App. 337, 346, 750 S.E.2d 410, 418–19 (2013) (looking to BLACK'S for the plain and ordinary meaning of a contract term).

b.      **The Plain Language of the SIA Consent Injunction**

The SIA Consent Injunction provides the following:

> FURTHER ORDERED that, ***unless the Liquidation Trustee consents in writing***, ***SIA and its affiliates*** are hereby barred from (i) assigning, transferring, or conveying ***SIA's Asserted Contested Matter Rights (as that term is defined in the Settlement Agreement) to any entity (as that term is defined in the Bankruptcy Code)***, (ii) contesting or opposing ***in any way*** the relief the Liquidation Trustee seeks or positions he asserts in the Contested Matter, and (iii) contesting or opposing in any way the relief the Liquidation Trustee seeks or positions he asserts in any case,

14

proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court **with respect to SIA's Asserted Contested Matter Rights**.

SIA Consent Injunction *2 (Emphasis added).

The meaning of the bold and italicized text above is plain and unambiguous:

"***SIA and its affiliates***"— the SIA Consent Injunction expressly enjoins not only Sea Island Acquisition LLC[22] but also its "affiliates."   Under Georgia law, the word "affiliate" means "a person that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with a specified person." *See* O.C.G.A. § 14-2-1110(1). Accordingly, the SIA Consent Injunction should be construed based on such definition. *See Hubbard/Downing, Inc. v. Kevin Heath Enters.,* Case No. 1:10-cv-1131-WSD, 2013 WL 12239523, **5-6 (N.D. Ga. May 30, 2013) (applying the definition of "affiliate" from O.C.G.A. § 14-2-1110(1) to the undefined term "affiliate" in an injunction).

"***SIA's Asserted Contested Matter Rights (as that term is defined in the Settlement Agreement)***" — The SIA Consent Injunction incorporates by reference the definition of SIA's Asserted Contested Matter Rights from the Settlement Agreement [Doc. No. 1409] *See* SIA Consent Injunction *2.  SIA's Asserted Contested Matter Rights is defined in the first paragraph of the Settlement Agreement, which states the following:

> 1.      Agreement Not to Contest.   SIA on its behalf and behalf of all of its affiliates hereby covenants and agrees that it will not contest or oppose directly or indirectly in any way the relief the Liquidation Trustee seeks in the Contested Matter[1] or in any case, proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court with respect to ***all rights SIA asserts in the Motion to Clarify or otherwise in the Contested Matter including, but not limited to, the Reserved Interests (as that term is defined on page three of the Motion to Clarify) (all***

---

[22]   "SIA" is defined in the SIA Consent Injunction as Sea Island Acquisition LLC.  *See* SIA Consent Injunction *1.

15

> *such rights shall be collectively referred to as the "SIA's Asserted Contested Matter Rights"*); *for the avoidance of doubt SIA's Asserted Contested Matter Rights shall not include the Common Areas (as that term is defined in the Settlement Agreement), and nothing in the Agreement shall prejudice the rights of Kings Point POA or the Liquidation Trustee with respect to the Common Areas*.

Settlement Agreement ¶ 1 (emphasis added).  So in relevant part, SIA's Asserted Contested Matter Rights means "*all rights* SIA asserts in the Motion to Clarify[23] or otherwise in the Contested Matter."[24]  *See id*. (emphasis added).  In terms of the phrase "all rights," the word "*all*" is synonymous with "every possible."[25]  Its modification of the word "rights" twice in the definition of "SIA's Asserted Contested Matter Rights"—in the phrase "all rights SIA asserts" and in the phrase "all such rights"—"evidences an intent" that the parties intended to include "every possible" right.  *Compare* SIA Settlement Agreement ¶ 1 *with Stettin v. National Union Fire Ins. Co.*, 861 F.3d 1335, 1337 (11th Cir. 2017) (use of the phase "any insured" twice in professional services exclusion "evidences an intent to create a joint obligation").  The word "*rights*" means, among other things, the "interest, claim, or ownership that one has in tangible or intangible property."  *See Right* BLACK'S LAW DICTIONARY (10th ed. 2014).  Accordingly, in relevant part, the phrase "all rights" means "every possible interest, claim, or ownership that one has in tangible or intangible property."  As SIA itself has acknowledged, it asserted ownership of "all assets of

---

[23] The Motion to Clarify refers to the Motion to Clarify Provisions Relating to the Implementation of the Confirmed Plan, which can be at Doc. No. 1102.  *See* Settlement Agreement *2.

[24] "Contested Matter" refers collectively to the "contested matter initiated by the Motion to Clarify along with the Liquidation Trustee's Preliminary Response, the Kings Point POA Preliminary Response, and the pleadings involving standing that resulted in the Standing Order."  *See id.* at *2.

[25] *See Interstate Equip. Co. v. Esco Co.*, Civ. Action. No. 5:11CV51-RLV, 2014 WL 3547438, *11 (W.D.N.C. July 17, 2014) (The phrase "every possible" is synonymous with the "ordinary, everyday meaning" of the word "all.").

the Debtors not expressly excluded by the Asset Purchase Agreement."[26]  Given the foregoing, the

term SIA's Asserted Contested Matter Rights means, among other things, "all assets of the Debtors

not expressly excluded by the Asset Purchase Agreement."

"***Any entity—(as that term is defined in the Bankruptcy Code)***"— The phrase "***any entity***"

has an extremely broad meaning.  The word "***any***" has an "expansive meaning."  *See Utica Mut.*

*Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, 820 F.3d 36, 46 (1st Cir. 2016).  Under the

Bankruptcy Code, the "term '***entity***' *includes*[27] *person*, estate, trust, governmental unit, and United

States Trustee."  *See* 11 U.S.C. § 101(15) (emphasis added).   The "term '***person***' includes

individual, partnership, and corporation."   *See* 11 U.S.C. § 101(41) (emphasis added).

Accordingly, the SIA Consent Injunction does not contain any carve outs and, therefore, applies

to all assignees, transferees, or conveyees.

"***In any way***" — The use of the phrase "***in any way***" makes it clear that—within the

scope of the injunction—there cannot be any contest or opposition whatsoever.[28]

---

[26]  *See* SIA's Amended Responses to Requests for Admission Propounded by Robert H. Barnett, Liquidation Trustee Under the Sea Island Liquidation Trust, Response No. 15 ("**Request for Admission No. 15:   Admit that you are not seeking a ruling from the Court in the Motion to Clarify as to any real estate interests other than those specifically set forth in the Motion to Clarify.**  DENIED.  By way of further response, SIA states that it seeks a ruling from the Court that *all assets of the Debtors not expressly excluded by the Asset Purchase Agreement* were sold to SIA and should be transferred to SIA.") (bolded emphasis in the original) (bolded and italicized emphasis added).

[27]  The word "includes" is "not limiting."  *See* 11 U.S.C. § 102(3).

[28]  *See Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 562 (Tex. 2015) (The phrase "in any way" means that "there are no restrictions" in any relevant way.); *Harkness v. United States*, 727 F.3d 465, 471 (6th Cir. 2013) (The use of the phrase—"*any* claim based *in any way*"—"casts a wide net.") (emphasis in the original); *see also Glover v. South Carolina Law Enf't Div.*, 170 F.3d 411, 414 (4th Cir. 1999) (*citing Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997)) (Congress could not have used "clearer terms" the word "testified" is "followed by the phrase 'in any manner'—a clear signal that the provision is meant to sweep broadly.")

4819-5193-0745, v. 1

*"__With respect to__"*—The phrase "*__with respect to__*" expands the scope of the injunction a great deal beyond SIA's Asserted Contested Matter Rights.[29]

### c.    Plaintiffs Request the Court to Rewrite the SIA Consent Injunction.

Plaintiffs correctly acknowledge that the "meaning of 'SIA's Asserted Contested Matter Rights' is determined under 'ordinary rules of contract construction.'"  *See* Doc. No. 7 * 23. However, Plaintiffs' conclusion that the phrase is limited to the "Cabin Bluff Reserved Interests," completely ignores such rules.  As the Eleventh Circuit notes in *Norfolk Southern Corporation v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004)—which Plaintiffs cite on page 23 of their Motion—"where the plain meaning of an agreement is clear, we cannot go beyond the four corners of the document to look for additional evidence of the drafters' intentions."  *See also Sierra Club v. Mieburg*, 296 F.3d 1021, 1029 (11th Cir. 2002) (also cited on page 23 of Plaintiffs' Motion) ("With a consent decree as with a contract, the *__first place__* we look and often the *__last place__* we look as well is to the *__document itself__*.") (emphasis added).

When a court interprets a contract under Georgia law, it "must determine whether the language therein is clear and unambiguous, and if it is, the contract is to be enforced according to its plain terms; the contract *__alone__* is looked to for its meaning."  *See Atlanta Development Authority v. Clark Atlanta University, Inc.*, 784 S.E.2d 353, 298 Ga. 575, 579 (2016) (page 28 of Plaintiffs' motion); *see also Azzouz v. Prime Pediatrics, P.C.*, 296 Ga. App. 602, 675 S.E.2d 314, 318 (2009) (page 23 of Plaintiffs' motion) (emphasis added) ("If the language is clear and unambiguous, contract construction is not necessary, and the contract will be enforced according to its clear

---

[29] *See Huffington v. T.C. Grp.*, LLC, 637 F.3d 18, 18-22 (1st Cir. 2011) ("[C]ourts describe the phrase 'with respect to' as synonymous with the phrases 'with reference to,' 'relating to,' 'in connection with,' and 'associated with,' and they have held such phrases to be broader in scope than the term 'arising out of,' to be broader than the concept of a causal connection, and to mean simply 'connected by reason of an established or discoverable relation.'")

4819-5193-0745, v. 1

terms.").  To determine whether language is clear and unambiguous, "a court may not strain to find an ambiguity and must enforce an unambiguous contract as written."  *See WA&W Capital Partners, LLC v. Bhandari*, 346 Ga. App. 598, 816 S.E.2d 804, 810 (2016); *see also Employers Mutual Casualty Co. v. Shivam Trading, Inc.*, No. 5:16-CV-58, 2017 WL 2126911, *2 (S.D. Ga. May 16, 2017) (C.J., Wood) (Courts cannot "create an ambiguity where none, in fact, exists.")

As the Eleventh Circuit observes in *FTC v. Leshin*, 618 F.3d 1221 (11th Cir. 2010) (cited on page 23 of Plaintiffs' Motion), if the "interpretation urged by one party is unreasonable *in light of the contract's plain language*, the contract is not ambiguous."  *See* 618 F.3d 1221, 1235 (quotation from parenthetical) (emphasis added).  Here, Plaintiffs' interpretation is unreasonable because it requires the Court to ignore large portions of the Settlement Agreement in violation of Georgia law.  *See Greenberg Farrow Architecture, Inc. v. JMLS 1422,* LLC, 339 Ga. App. 325, 791 S.E.2d 635, 639 (2016) ("Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties.  To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred.")

[remainder of page intentionally left blank]

If the phrase "SIA's Asserted Contested Matter Rights" has the same meaning as the phrase "Reserved Interests," as urged by the Plaintiffs, the parties would not have had any reason even to define the phrase "SIA's Asserted Contested Matter Rights" in the first place. Instead, they would have just used the phrase "Reserved Interests." A reading of the language of the Settlement Agreement to support Plaintiffs' argument requires drastically cutting the language that is actually included in the Settlement Agreement, as shown in the comparison below.

| **The Actual Language** | **Language Necessary to Support SIA's Argument** |
|---|---|
| 1.    Agreement Not to Contest.  SIA on its behalf and behalf of all of its affiliates hereby covenants and agrees that it will not contest or oppose directly or indirectly in any way the relief the Liquidation Trustee seeks in the Contested Matter or in any case, proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court with respect to all rights SIA asserts in the Motion to Clarify or otherwise in the Contested Matter including, but not limited to, the Reserved Interests (as that term is defined on page three of the Motion to Clarify) (all such rights shall be collectively referred to as the "SIA's Asserted Contested Matter Rights"); for the avoidance of doubt, SIA's Asserted Contested Matter Rights shall not include the Common Areas (as that term is defined in paragraph two of the Kings Point POA Preliminary Response), and nothing in the Agreement shall prejudice the rights of Kings Point POA with respect to the Common Areas.<br><br>Settlement Agreement ¶ 1. | 1.    Agreement Not to Contest.  SIA on its behalf and behalf of all of its affiliates hereby covenants and agrees that it will not contest or oppose directly or indirectly in any way the relief the Liquidation Trustee seeks in the Contested Matter or in any case, proceeding, or otherwise regardless of whether such contest or opposition occurs in or out of court with respect to ~~all rights SIA asserts in the Motion to Clarify or otherwise in the Contested Matter including, but not limited to,~~ the Reserved Interests ~~(as that term is defined on page three of the Motion to Clarify) (all such rights shall be collectively referred to as the "SIA's Asserted Contested Matter Rights"); for the avoidance of doubt, SIA's Asserted Contested Matter Rights shall not include the Common Areas (as that term is defined in paragraph two of the Kings Point POA Preliminary Response), and nothing in the Agreement shall prejudice the rights of Kings Point POA with respect to the Common Areas.~~ |

Also, if the Plaintiffs' argument is followed, the parties would not have had any reason to define "Contested Matter" in the fourth WHEREAS clause on the second page of the settlement agreement given that the only time the phrase is used is in connection with defining "SIA's Asserted Contested Matter Rights."

| **The Actual Language** | **Language Necessary to Support SIA's Argument** |
|---|---|
| **WHEREAS**, the Bankruptcy Court entered an Order (the "Standing Order") ruling that Kings Point POA has standing in the contested matter (the contested matter initiated by Motion to Clarify along with the Liquidation Trustee's Preliminary Response, the Kings Point Preliminary Response, and the pleadings involving standing that resulted in the Standing Order shall be collectively referred to as the "Contested Matter").  *See* Bankr. Docket No. 1217.<br><br>Settlement Agreement *2. | **WHEREAS**, the Bankruptcy Court entered an Order (the "Standing Order") ruling that Kings Point POA has standing in the contested matter (the contested matter initiated by Motion to Clarify along with the Liquidation Trustee's Preliminary Response, the Kings Point Preliminary Response, and the pleadings involving standing that resulted in the Standing Order shall be collectively referred to as the "Contested Matter").  *See* Bankr. Docket No. 1217. |

For the same reason, there also would not have been any need for the parties to define the phrases "Liquidation Trustee's Preliminary Response" (in the second WHEREAS clause on the second page) or "Kings Point Preliminary Response" (in the third WHEREAS clause on the second page) because they are only used in the defined phrase "Contested Matter."

On page 27 of their Motion, Plaintiffs argue that "neither SIA nor any reasonable person would have entered into the Settlement Agreement" based on the Liquidation Trustee's interpretation.  In support of their argument, Plaintiffs cite *Cahill v. United States*, 303 Ga. 148, 810 S.E.2d 480 (2018) and quote it in a parenthetical for the proposition that courts must interpret contracts in a way that does not lead to an "absurd result."  Plaintiffs' argument fails for three

reasons.  *First*, the process set up by the SIA Consent Injunction is a reasonable solution to a complex problem.  By entering into the Settlement Agreement and consenting to the SIA Consent Injunction, SIA effectively told the Liquidation Trustee that he could take SIA's word that there were no more issues into which he needed to look.  Plaintiffs also fail to acknowledge that the Liquidation Trustee must exercise his consent rights in good faith.[30]

     *Second*, in the absence of contractual ambiguity, the question of whether it made sense from a business standpoint to enter into the Settlement Agreement is not important.  Whether a contract "'makes sense' as a business matter is largely irrelevant."  *See Leonard v. Executive Risk Indemnity, Inc.* (*In re SRC Holding Corp.*), 545 F.3d 661, 668 (8th Cir. 2008) ("Freely contracting actors in the marketplace, particularly sophisticated business entities who rely on experts to advise them, are best suited to determine for themselves what makes the most economic sense, and the language that they have mutually negotiated and agreed to is the best evidence of what those parties intended."); *Anderson v. Astro Exterminating Services, Inc.*, 259 Ga. App. 370, 577 S.E.2d 67, 68 (2003) ("When the language of an agreement is plain and unambiguous, the court must afford its literal meaning, despite a party's contention that he understood the contract to mean something else."); *St. Regis Paper Co. v. Aultman*, 280 F. Supp. 500, 509 (M.D. Ga. 1967) (interpreting a

---

[30] Consent orders are "construed according to accepted contract principles."  *See Reynolds v. Roberts*, 207 F.3d 1288, 1300 n.22 (11th Cir. 2000).  One accepted contract principle under Georgia law is that "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement."  *See Kin Chun Chung v. JP Morgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1343 (N.D. Ga. 2013) (citation omitted).  The entire paragraph containing the injunction contains the following qualification: "unless the Liquidation Trustee consents in writing."  *See* SIA Injunction Order ¶ 4 ("FURTHER ORDERED that, **unless the Liquidation Trustee consents in writing**, SIA and its affiliates are hereby barred from . . ..") (emphasis added). So the Liquidation Trustee must exercise his consent rights consistent with his duty.  *See Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 452, 636 S.E.2d 139 (2006).

contract based on "all of the circumstances of the contract, ascribes the most reasonable, probable, and natural conduct to the parties" only applies where the contract is "ambiguous").

*Third*, SIA's argument is especially untenable given SIA's acknowledged sophistication and representation by counsel. *Compare* Doc. No. 154 at 22 (SIA describing itself to the bankruptcy court as a "sophisticated and well-informed investor."); Doc. No. 1409 (SIA "represents and warrants" in the settlement agreement that it is "sophisticated.") *with OMV Assocs. Ltd. Partnersh'p, Trimont Real Estate Advisors, Inc.*, No. 10-14911, 484 F. App'x 299, *6 (11th Cir. June 5, 2012) ("We are not in the business of rewriting lawyer-drafted contracts for sophisticated parties when they wish that the outcome after performance had been different."); *see also Georgia Operators Self-Insurers Fund*, 143 F. Supp. 3d 1317, 1347 (N.D. Ga. 2015) (Ruling against "sophisticated" party because it was capable of drafting the contract consistently with its later argued-for interpretation but entered into a different agreement.)

Plaintiffs' verb-tense argument—that "'SIA's Asserted Contested Matter Rights' is necessarily limited to the Cabin Bluff Reserved Interests" because of the use of the word is "asserts" instead of "asserted"—fails as a matter of law for two independent reasons. *First*, it is simply incorrect that the Court made its comments ***after*** SIA responded to the Liquidation Trustee's requests to admit. As reflected on page 24 of Plaintiffs' Motion, the hearing from which Plaintiffs quote the transcript was held on ***April 10, 2014***. After that, on ***June 30, 2014***, SIA's served its discovery response in which it admits that it "seeks a ruling from the Court that all assets of the Debtors not expressly excluded by the Asset Purchase Agreement were sold to SIA and should be transferred to SIA."[31] The issue remained open. *Second*, it is grammatically correct to

---

[31] *See* SIA's Amended Responses to Requests for Admission Propounded by Robert H. Barnett, Liquidation Trustee Under the Sea Island Liquidation Trust, Response No. 15 (emphasis added).

use the present tense to describe what a pleading asserts regardless of whether the party that filed the pleading still makes such assertions. Even if the Motion to Clarify had been amended—which it never was—it was grammatically correct to refer to assertion in the original (as opposed to an amended) motion in the present tense. *See*, *e.g.*, *Martin Brustein v. Ira B. Lampert, et al.*, Case No. 04-61159-CIV, 2005 WL 8154797 (S.D. Fla. 2005) ("In its ***Initial Motion***, the Brustein Group ***asserts*** that it should be appointed the lead plaintiff group in this Consolidated Action.") (emphasis added).[32]

Plaintiffs contend that "SIA would never have sat idly by and failed to disclose to the Court that the order contained a material and obvious misstatement of fact." *See* Doc. No. 7 *26. Yet Plaintiffs provide no evidentiary support for such assertion. *See* S.D. Ga. L.R. 7.1 ("***Every*** factual assertion in a motion, response, or brief ***shall*** be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion.") (emphasis added). But even if Plaintiffs had done so or offer testimony on that issue at the hearing, given the difficulty involve with proving intent, it would be virtually impossible for the Liquidation Trustee to prove otherwise at expedited hearing without the benefit of discovery.

---

[32] *See also Wilene Jeffrey v. U.S. Bank Nat'l. Ass'n.*, No. CV-3751, 2018 WL 3702456 (N.D. Ga. 2018) ("In Plaintiff's ***original Complaint***, she ***asserts*** claims for wrongful foreclosure, breach of contract, fraud, improper securitization, fraudulent assignment, violations of the Internal Revenue Code, and violation of the Securities and Exchange Act.") (emphasis added); *Autry Milton v. LTD Financial Servs.*, No. CV-210-119, 2011 WL 291363 (S.D. Ga. 2011) ("In the ***original complaint***, ***Plaintiff alleges*** that Defendant's decision to cease debt collection activities, rather than validate the debt with Citibank upon Plaintiff's request, constitutes a violation of the FDCPA.") (emphasis added); *Charles Nelson II v. Kevin Chaney, et al.*, No. CV404-207, 2006 WL 1039885 (S.D. Ga. 2006) ("The ***initial complaint asserts*** claims under 42 U.S.C. §§ 1983 and 1985 and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq., stemming from plaintiff's May 24, 2001 arrest on drug charges.") (emphasis added).

### 2.    SIA Clearly Assented to the Settlement Agreement.

Plaintiffs argue on page 29 that the Settlement Agreement is not a valid contract because there was never a "meeting of the minds" claiming that SIA did not assent to the terms of the contract.  Plaintiffs' argument relies on a ***subjective*** theory of intent, which is improper.  *Graham v. HHC St. Simons, Inc.*, 322 Ga. App. 693, 746 S.E.2d 157 (2013), upon which Plaintiffs rely, undercuts their appeal by applying an "***objective*** theory of intent whereby one party's intention is deemed to be that meaning a reasonable [person] in the position of the other contracting party would ascribe to the first party's intent."  *See* 746 S.E.2d 157, 160 (emphasis added); *see also Extremity Healthcare, Inc. v. Access to Care America, LLC*, 339 Ga. App. 246, 793 S.E.2d 529, 535 (2016) ("In the formation of contracts, however, it was settled long ago that secret, ***subjective intent is immaterial***, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties.") (emphasis added).  Here, no "reasonable person" in the position of the Liquidation Trustee would have—nor could have — concluded that SIA had not "assented" to the Settlement Agreement.  After Gilbert read the Settlement Agreement and SIA's outside counsel advised him, he signed it.  *See* Doc. No. 1409 * 14; *see also Extremity Healthcare, Inc. v. Access to Care America, LLC*, 339 Ga. App. 246, 793 S.E.2d 529, 535 (2016) ("The affixing of their signatures to the instrument shows their mutual assent to its terms and provisions.")  Moreover, even after objecting to the order, counsel of record for SIA consented to the order approving the Settlement Agreement.  *Compare* Doc. No. 1450, *1 ("SIA, BOTO, and Kings Point consent to the relief granted in this Order.")

### 3.    The SIA Consent Order Can Stand Without the Settlement Agreement.

In a transparent attempt to get around the one year deadline of for Rule 60(b)(1) of the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 60(c)(1), Plaintiffs argue that the ***SIA Consent***

***Injunction*** is invalid because there was never a meeting of the minds as to the ***Settlement Agreement***, *see* Doc. No. 7 * 30.  Even if there had not been a meeting of the minds for the Settlement Agreement—which there was—Plaintiffs are trying to assert a disguised, untimely Rule 60(b)(1) argument.  *See Stancu v. Starwood Hotels and Resorts Worldwide, Inc.*, No.15-11285, 672 F. App'x 362, 367 (5th Cir. Dec. 5, 2016) ("The district court correctly characterized Stancu's argument that the Settlement Agreement was invalid for lack of a meeting of the minds as a motion pursuant to Rule 60(b)(1).")  But, even if Plaintiffs' request were timely, it would be to no avail.  Given that SIA made a "deliberate and strategic choice to settle," Plaintiffs "cannot be relieve[d] of the terms of the settlement merely because the consequences are different than [it] anticipated."  *See In re McFarland*, Case No. 11-10218, 2016 WL 882168, *6 (Bankr. S.D. Ga. Mar. 7, 2016) (C.J., Barrett) (refusing to grant party relief from consent order, the Court stated "[a] party seeking to modify a consent order has a high hurdle to clear and the wind in its face.")

None of the cases Plaintiffs cite support their argument.  Plaintiffs cite *Jacksonville Branch, NAACP v. Duval City School Board*, 978 F.2d 1574 (11th Cir. 1992) for the proposition that for "enforcement purposes" consent injunctions are interpreted "under principles of contract law," but omit the critical statement differentiating that case that for "purposes of modification, ***consent decrees are not governed by contract law***, but are ***treated as judicial acts***, ***akin to injunctions***."  *See* 978 F.2d 1574, 1578.  While it is true that *Reynolds v. Roberts*, 251 F.3d 1350 (11th Cir. 2001), discusses the requirement that consent decrees require that parties must consent to be bound, that decision is completely at odds with the facts of this case.  *Reynolds* involves the consent rights of third-party intervenors.  *Id.* Here, there is no dispute that counsel of record signed the SIA Consent Order.  *See* SIA Consent Order *1 ("SIA, BOTO, and Kings Point POA consent to the relief granted in this Order.") & *6 (Consented to by: counsel of record for SIA).

4.    The SIA Consent Injunction Is Valid Under Rule 65(d).

The only decision Plaintiffs offer in support of their Rule 65(d)(5) is an out-of-circuit decision from 1977.  Not surprisingly, they cite no Eleventh Circuit decisions because—in the Eleventh Circuit—a "consent judgment is to be read in the light of the circumstances surrounding its formation and any other documents expressly incorporated in the decree." *See Abbot Laboratories v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1240-41 (11th Cir. 2000).  The Eleventh Circuit does not "set aside injunctions under Rule 65(d) unless they are so vague they have no reasonably specific meaning."  *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (2001).  This is especially the case if the enjoined party helped "craft" the injunction, *see Combs v. Ryan's Coal Co.*, 785 F.2d 970, 979 (11th Cir. 1986), or if they did not appeal the order, *see Williams v. City of Dothan*, 818 F.2d 755, n.8 (11th Cir. 1987) (distinguishing Rule 65(d) decisions as direct appeal cases).

Gilbert executed the Settlement Agreement on behalf of SIA as general counsel of SIA.  *See* SIA Settlement Agreement *17.   According to the Gilbert Harrell website, Gilbert is experienced and has "***thirty-five years*** in ***real estate*** and ***commercial*** and ***civil litigation***."  As such, Gilbert is an "experienced member of the bar who had reason to be familiar in his past work with orders [granting injunctive relief], as well as the consequences of violating those orders."  *See Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1438 (N.D. Ill. 1995).  "Even if [Gilbert's] past general legal experience had not given him a firm understanding" of prohibitory injunctions, his "specific experience" as general counsel for SIA during the pendency of the underlying "litigation should have filled in the gap."  *See* 888 F. Supp. 1427, 1438.

4819-5193-0745, v. 1

Assuming for the sake of argument that Gilbert was not able to understand the order on his own, there is no reason he should not have understood it after counsel advised him. *Compare* SIA Settlement Agreement ¶ 6 *with In re Williams*, 509 F.2d 949, 960 (2d Cir. 1975) (reversing criminal contempt conviction because court's rulings were "likely to confuse a layman" and the defendant "received no apparent help from counsel"). SIA's counsel were in a very good position to advise Gilbert about the rights SIA asserts in the "Motion to Clarify or otherwise in the Contested Matter" because such counsel, and such counsel alone, could assert rights on behalf of SIA in the "Motion to Clarify or otherwise in the Contested Matter." *See*, *e.g.*, *SunSouth Capital, Inc. v. Harding Enterprises, LLC*, Case NO. 1:15-CV-823-WKW, 2017 WL 4079720,*2 (M.D. Ala. Sep. 14, 2017) ("Because it is a limited liability company, Harding Enterprises must retain counsel to appear in federal court . . .."); *Souffrant Denhil Oil, LLC*, No. 10-80246-CIV, 2010 WL 1541192, *1 (S.D. Fla. April 16, 2010) ("The proposition that a corporation must be represented by an attorney also applies to limited liability companies.") (collecting cases). "Thus, while a lay person might not" inherently understand the defined term "SIA's Asserted Contested Matter Rights," SIA would be "hard pressed to profess such ignorance." *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, Civ. No. 3:03-CV-0257-N, 2004 WL 7329341, *8 (N.D. Tex. Mar. 3, 2004) ("[T]he audience of the [consent injunction] is a publicly traded corporation with an ***in-house legal department, represented by a well-regarded law firm***.")

Since Plaintiffs have failed to meet their burden to demonstrate substantial likelihood of success on the merits, Plaintiffs are not entitled to an injunction and the Court need not even consider the remaining three factors. *See, e.g., Bloedorn*, 631 F.3d at 1229.

## C.    Plaintiffs Have Identified No Threat That Will Cause Irreparable Injury.

Even if the Court finds that Plaintiffs have demonstrated substantial likelihood of success on the merits, Plaintiffs have failed to demonstrate that they will suffer alleged ***future*** irreparable

4819-5193-0745, v. 1

injury such that a preliminary injunction is not warranted.  Indeed, a "showing of irreparable injury is 'the sine qua non of injunctive relief.'"  *Siegel*, 234 F.3d at 1176 (*quoting Jacksonville*, 896 F.2d at 1285.  "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  *Id.*; *see also United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983) ("Success in establishing a likelihood [movant] will prevail on the merits does not obviate the necessity to show irreparable harm.").

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."  *Jacksonville*, F.2d at 1285 (*quoting Sampson v. Murray*, 415 U.S. 61, 88 (1974).  As both the United States Supreme Court and the 11th Circuit Court of Appeals have explained:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Jefferson County*, 720 F.2d at 1520 (11th Cir. 1983) (quoting *Sampson*, 415 U.S. at 90) (emphasis in original); *Mobility Transit Servs., LLC v. Augusta*, No. CV 113-082, 2013 WL 12122573, at *3 (S.D. Ga. June 28, 2013).  "The injury must be neither remote nor speculative, but actual and imminent."  *Jacksonville*, 896 F.2d at 1285 (11th Cir. 1990) (quotation and citation omitted);  *see also  Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016)  ("A preliminary injunction may not be entered based only on a 'possibility' of irreparable harm."); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018) ("It is hornbook law that perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be

29

rendered.") (internal quotation and citation omitted).

As a result, "[t]he harm considered by the district court is necessarily confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits." *Id.* A movant "must allege a future injury, *i.e.*, one that will occur ***after*** the [movant's] request for a preliminary injunction." *United States v. Jenkins*, 714 F. Supp. 2d 1213, 1222 (S.D. Ga. 2008); *see also Pruitt*, 326 F. Supp. 3d 1356; *Cuthbert Berry Farms, LLC v. Bei Int'l, LLC*, No. CV 214-27, 2014 WL 12573840, at *2 (S.D. Ga. May 12, 2014). Additionally, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party ***alleges***, and ***ultimately proves***, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in added).

Plaintiffs cannot show that they will irreparably harmed by the Liquidation Trustee or his counsel advising people about the SIA Consent Injunction and the Trust's interpretation of it. The reason is that Plaintiffs allege that they have recorded a *lis pendens* as to this adversary proceeding as required by O.C.G.A. § 23-3-62. *See* Compl. ¶ 158. So by definition, Plaintiffs have put the "world on notice" of this adversary proceeding—a copy of the complained of correspondence is attached to the complaint[33]—such that a "prospective purchaser is subject to the court's final determination of the issues presented." *See In re Flyboy Aviation Properties, Inc.*, 501 B.R. 828, 839 (Bankr. N.D. Ga. 2013). Given the foregoing, there is simply no basis for their motion. Plaintiffs have ensured that they can no longer keep the injunction a secret.

In the Motion, Plaintiffs fail to provide *any* evidence of irreparable harm. Local Rule 7.1 of the Southern District of Georgia (which has been expressly adopted by the Bankruptcy Court

---

[33] *See* Compl. Exs. A, B, C, D, E, F

for the Southern District of Georgia) expressly provides that "*[e]very* factual assertion in a motion, response, or brief ***shall*** be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion." L.R. 7.1(a) (emphasis added). Plaintiffs have provided no affidavits or other record support for their bare assertions of irreparable injury, which is insufficient as a matter of law.

Moreover, in fact, Plaintiffs fail to even *allege* any specific *future* harm that will occur prior to the resolution of this adversary proceeding on the merits, as they are required to do so. Instead, Plaintiffs merely rely on the conclusory statement that they are generally harmed because Defendant is purportedly "hindering Plaintiffs from operating their business" by causing a lack in confidence in SIA by third parties.  Motion, p. 33.  This clearly falls far short of Plaintiffs' burden of proof.  *See Dongguan Prestige Sporting Prod. Co., Ltd v. Merits Co. Ltd.*, No. 1:14-CV-3399-AT, 2014 WL 12573534, at *1 (N.D. Ga. Oct. 23, 2014) (holding that Defendants' showing of loss of and damage to good will, loss of business opportunities, and damage to reputation "was far too conclusory, speculative, and preliminary in nature to meet the rigorous standard for establishing irreparable harm.")

Additionally, Plaintiffs undoubtedly have an adequate remedy at law.  Plaintiffs are seeking "an injunction prohibiting Defendant [from] asserting any ownership over, or otherwise interfering with Plaintiffs' rights in, Plaintiffs' real property interests other than the Cabin Bluff Reserved Interests." Motion, p. 35.  In other words, Plaintiffs are asking that the Court make a determination that Plaintiffs own the property that is the subject of this dispute and that Defendant has no claim to such property.  Plaintiffs are effectively seeking to shoehorn the remedy they are seeking in their quiet title claims (*i.e.*, a determination as to the parties' rights in the contested property and a declaration that Plaintiffs own such property) into the vehicle of a preliminary injunction.  This is

4819-5193-0745, v. 1

clearly improper.  Plaintiffs have an adequate remedy at law which they have already sought.  *See* Complaint (Count IV – Removal of Cloud From Title pursuant to O.C.G.A. § 23-3-40, *et seq.*; Count V – Quieting Title Against All The World pursuant to O.C.G.A. § 23-3-60, *et seq.*) [Doc. No. 1758].

Moreover, "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (holding that the district court did not abuse its discretion in denying motion for preliminary injunction for lack of irreparable harm in light of five-month delay where record showed no explanation or justification for such delay). This is because "the very idea of a preliminary injunction is premised on the need for *speedy and urgent* action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (emphasis added). Indeed, "a party's failure to act with speed or urgency in moving for a preliminary injunction *necessarily* undermines a finding of irreparable harm." *Id.* (emphasis added).

Similarly here, like the Movants in *Wreal*, Plaintiffs have offered no explanation in their 34-page motion as to why they waited four and a half months after the June 14, 2018 letter sent by Trustee's counsel to seek an injunction.[34]   Indeed, it has been almost a year since SIA was on notice—upon its counsel of record being served with the Liquidation Trustee's motion to approve his decision to extend the duration of the trust—that the Liquidation Trustee asserts that the SIA

---

[34] In the Motion, Plaintiffs also point to conduct that the Trustee and/or Trustee's counsel purportedly engaged in 2016.  *See* Motion, pp. 18-19.  To the extent that Plaintiffs use those purported actions as a basis for seeking a preliminary injunction, Plaintiffs (again) offer no explanation as to the two year delay.

4819-5193-0745, v. 1

Consent Order granted "an expansive scope of injunctive relief arising out of the order approving the SIA settlement." *See* Doc. No. 1742 ¶ n.43, ¶ 45, Ex. E; *see also id.* at ¶ 20; n.12.

So Plaintiffs have been on notice of the Liquidation Trustee's interpretation of the SIA Consent Injunction for some time and knew (or at least could have reasonably foreseen) that the Liquidation Trustee would act in accordance with that interpretation by, *inter alia*, notifying third parties of the Trust's interests and potentially asserting such interests. Plaintiffs chose to do nothing at that time, and, instead, chose to move forward with property sales at their own peril. Surely, had Plaintiffs truly been at risk of immediate and irreparable harm, they would have sought injunctive relief shortly after the June 14, 2018 letter. This inexplicable four-and-a-half-month delay cuts against a finding of irreparable harm.

Finally, "[t]he purpose of such a preliminary injunction is 'merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Lambert*, 695 F.2d at 539 (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *see also Bloedorn*, 631 F.3d at 1229. The sale of property—which is arguably in violation of an injunction—is hardly the preservation of the *status quo*.

### 1. The Court Recognizes that the Liquidation Trustee Is Properly Exercising His Fiduciary Duty.

Plaintiffs allege that the Liquidation Trustee has engaged in a "gross abuse of the bankruptcy process" and "strategy of exploitation" based on a "indefensible misconstruction" of the Settlement Agreement to "extract hold up payments." *Motion*, p. 2-3. The examples Plaintiffs give are all court-approved transactions.[35] Even though Judge John S. Dalis ultimately ruled

---

[35] In fact, they are all set forth in the second motion to the Liquidation Trustee's motion to approve the decision to extend the duration of the Trust. *See* Doc. No. 1742 **10-11. Indeed, it appears that counsel for Plaintiffs obtained the information to make the allegations from such motion. In fact, he chose the three transactions labelled "sale."

against the trust in its litigation with Kings Point Property Owners Association, Inc. ("Kings Point POA"), he went out of his way to be very clear that the Liquidation Trustee was performing his fiduciary duty in such litigation.  During counsel for Kings Point POA's oral argument, Judge Dalis made the following statement:

> THE COURT:  That's part of what Mr. Barnett's responsibility is to marshal these assets.
>
> MR. WALKER:  That's right.
>
> THE COURT:  If he thinks he's got an asset he's obligated to use his best business judgment to see if I am willing to expend the estate's money in pursuit of what I believe to be a valuable asset.  Now they have asserted that they think that there is a valuable asset here and I think you hit it right on the head.  It's 4 acres of undeveloped property that the trust says it's ours and I want to sell it and generate money to pay unsecured creditor claims so I hope that if I haven't relayed it to the property owners you can that Mr. Barnett and the trust is not being stubbornly litigious and trying to wear the property owners out financially here.  He's got that obligation to liquidate these assets, and we know how it happened but by virtue of that happening put these assets, and I said, the bundles of obligations, rights, and liabilities that went along with it, weren't adequately transferred to the Kings Point Property Owners' Association in 2009.  And now the question before us is who owns it, and I have allowed you to come in to say not only who owns it but who should own it and –

Doc. No. 1288 ("July 15, 2015 Hearing Tr.") *58:17-59:12.

> **2.    The Liquidation Trustee Reached Out to the Black Banks River Residences Condominium Association, Inc. Because SIA Refuses to Give the Liquidation Trustee Access.**

Plaintiffs state that the Liquidation Trustee "laid bare his strategy of exploitation in a letter to Black Banks River Residences Condominium" because he "sought access to the Resort Unit," so he could "increase his chances of reaching a consensual resolution with SIA."  *See* Doc. No. 7 *3.  Plaintiffs fail to inform the Court for almost two months the parties have been trying to meet to consensually resolve the dispute.  In fact, the parties recently agreed to meet in person on

4819-5193-0745, v. 1

November 29, 2018.  During this process though, SIA has been unwilling to give the Liquidation

Trustee even basic information upon which he could make a reasoned judgment about a potential

resolution.  Plaintiffs attach a number of correspondence from counsel for the Liquidation Trustee,

but they fail to attach a September 14, 2018 letter to counsel for SIA.  (A copy of the letter is

attached as Exhibit "1".)  The letter was sent following a meeting during which counsel discussed

the Resort Unit of the Black Banks River Residences Condominium Association, Inc.  As set forth

in the letter, there is no dispute that Sea Island Company and Sea Island Coastal Properties, Inc.

purported to convey the resort unit to SIA even though Sea Island Resort Residences, LLC owned

the property.  During such meeting, counsel for SIA took the position that it did not matter that the

wrong debtor entities purportedly conveyed the unit because the plan provides for substantive

consolidation.  The problem with such argument is timing:  substantive consolidation does not take

effect until the Effective Date (as that term is defined in the Plan).  *See* Plan § 7.02.  And the Plan

defines the "Effective Date" as the "first Business Day following the date on which all conditions

to consummation set forth in Article IX of the Plan have been satisfied or waived…."  *See* Plan p.

11 of 54.  One of those conditions is that the "transactions contemplated in the Asset Purchase

Agreement have been consummated."  *See* Plan § 9.02(d).  As such, given that the closing must

occur before the Effective Date and that substantive consolidation did not occur until the Effective

Date (or in other words, substantive consolidation occurs after the closing), substantive

consolidation could not have affected the closing.  As a result, in a letter dated September 14, 2018,

counsel for the Liquidation Trustee requested access to the unit.  Since SIA made no secret that it

was unwilling to provide any meaningful amount of information to the Liquidation Trustee,

counsel for the Liquidation Trustee advised that—if SIA would not assist—they would reach out

directly to Black Banks River Residences Condominium Association, Inc.  It would have been a

very simple for SIA to have let the Liquidation Trustee or one his agents obtain access to the unit, but it refused to do so.  Now SIA purports to be "upset" that the Liquidation Trustee reached out.

### 3. Counsel for the Liquidation Trustee Emailed the Partner at Hunter Maclean Who Executed the Injunction.

Plaintiffs state that "Defendant's counsel emailed [Hunter Maclean] SIA's outside counsel for real estate transactions."  *See* Doc. No. 7 *20.  The Hunter Maclean partner to whom counsel for the Liquidation Trustee sent the email was well aware of the SIA Consent Injunction given that he—as counsel of record for SIA—signed such order on behalf of SIA.  (A copy of the email is attached as Exhibit "D" of the Compl.)  In fact, given that such partner had signed the consent order and was—and is still—counsel of record for SIA in the bankruptcy cases, counsel for the Liquidation Trustee copied such partner on his June 14, 2018 letter to the general counsel for SIA. *See* Doc. No. 7 Ex. E.

All of the actions Liquidation Trustee has taken are necessary to perform his fiduciary responsibilities and investigate claims.  As such, Plaintiffs have not met their burden of demonstrating irreparable harm such that the Motion stands to be denied.

### D. An Injunction Would Be Contrary To the Interests of the Public.

As the Supreme Court has explained, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 1803, 72 L. Ed. 2d 91 (1982).  Here, an injunction would clearly be contrary to the interests of the public because of the "strong public policy that the Trustee administer assets of the bankruptcy estate for the benefit of creditors and interested parties."  *See In re Willis*, 411 B.R. 783, 787 (Bankr. S.D. Fla. 2009), aff'd sub nom. *Willis v. Menotte*, No. 09-82303-CIV, 2010 WL 1408343 (S.D. Fla. Apr. 6, 2010), aff'd sub nom. *In re Willis*, 424 F. App'x 880 (11th Cir. 2011).  An order enjoining

the Liquidation Trustee would effectively hamstring the Trustee's ability to act for the benefit of the creditors and interested parties with respect to those rights. If the Trustee is enjoined, the trust may potentially lose those rights to the harm of the creditors and other interested parties. Finally, "the public interest is best served when the Bankruptcy Rules and Code are adhered to strictly. An injunction would prevent [the Trustee] from completing his obligation under the Code and would be inappropriate." *In re Taylor*, 196 B.R. 197, 201 (Bankr. M.D. Fla. 1996) (holding that Chapter 7 debtor was not entitled to injunction preventing Chapter 7 Trustee from scheduling sale of debtors interest in trust created by his father). Here, an injunction would prevent the Trustee from performing his duties such that the public interest would be harmed.

Moreover, Plaintiffs were put on notice (through the letter sent by Trustee's counsel) of the Liquidation Trustee's interpretation of the SIA Consent Injunction by June 14, 2018. To the extent that Plaintiffs continued to attempt to sell the property after that date, Plaintiffs proceeded at their peril and in the face of a strong policy favoring parties to proceed with caution in the face of an injunction. In connection with an analogous injunction (the automatic stay), courts— including the Southern District of Georgia—have admonished parties and their counsel to proceed with caution. *See In the Matter of Durango Ga. Paper Co.*, 297 B.R. 316, 321 (Bankr. S.D. Ga. 2003) (J., Davis) ("To do otherwise risks injury to the client and to the attorney who might

otherwise give dangerously erroneous advice.")[36, 37]

The relief Plaintiffs seek also clearly violates the strong public policy that favors the finality of judgments, settlements, and orders of the court. *See, e.g. Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1383 (11th Cir. 1988) ("strong policy favoring the finality of awards and judgments"); *Rubens v. Ellis,* 202 F.2d 415, 418 (5th Cir. 1953) ("the finality of judgments as a matter of public policy" is that "the end that controversies once decided shall remain in repose"); *Gaines v. Wren,* 34 F.R.D. 220, 221 (N.D. Ga. 1963) (" It is the policy of the law to protect the finality of judgments not only for the benefit of the litigants but in the public interest in the expeditious disposition of litigation."); *see also Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) (public policy strongly favors pretrial settlement in all types of litigation but especially bankruptcy cases).

Granting Plaintiffs' request to rewrite the injunction would frustrate the important bankruptcy policy of a "prompt and effectual administration and settlement of the [debtor's] estate." *Katchen v. Landy*, 382 U.S. 323, 328 (1966) (quoting *Ex parte Christy*, 44 U.S. 292, 312 (1845)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (noting that Congress

---

[36] *See also Bank of America v. Lehman Brothers Holdings Inc.* (*In re Lehman Brothers Holdings Inc.*), 439 B.R. 811, 837 (Bankr. S.D.N.Y. 2010) (Given that "BOA acted with the advice of experienced and sophisticated counsel," the court assumes that it was "fully informed regarding the untested, uncertain and extremely aggressive legal position that it was advancing and the risks it was thereby assuming. BOA, in the Court's view, had a responsibility to approach the setoff issue with far more restraint than was shown here, and the Court believes that the actions taken were surprising and, quite frankly, disappointing for a leading financial institution that should care a great deal about its reputation."); *In re Steward*, 338 B.R. 654, 662 (Bankr. D.N.J. 2006) (entering sanctions and quoting *Durango*).[36] In light of this, it would be against public policy to give the Court's blessing to Plaintiffs flouting the express terms of the SIA Consent Injunction.

[37] In the analogous situation of a stay violation, some courts have found that parties have an obligation to "cooperate in the spirit of professionalism" and must engage in "reasonable efforts" to resolve purported violations of the stay prior to filing a motion to enforce the stay. *In re Briskey*, 258 B.R. 473, 480 (Bankr. M.D. Ala. 2001). Here, Plaintiffs could have—but did not—raise these issues with counsel for the Defendant prior to filing their Complaint or Motion.

38

granted bankruptcy courts with comprehensive jurisdiction so "they might deal efficiently and expeditiously" with bankruptcy matters (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984))).  Indeed, the very first bankruptcy rule provides that the "rules should be construed to "secure the just, ***speedy***, and inexpensive determination of every case and proceeding.")  *See* Fed. R. Bank. P. 1001 (emphasis added).

As such, the entry of an injunction in this case would necessarily disserve the public's interest.

## CONCLUSION

For the reasons discussed above, each of the four factors weigh in favor of finding that a preliminary injunction is not warranted, and Plaintiffs have failed to carry their burden to demonstrate that they are entitled to an injunction.

4819-5193-0745, v. 1

**WHEREFORE,** The Liquidation Trustee respectfully requests that the Court (i) deny the

Motion and (ii) grant such other and further relief as the Court may deem just and proper.

Dated:  October 29, 2018

                                      James L. Drake, Jr.
                                      Georgia Bar No. 229250
                                      James L. Drake, Jr., P.C.
                                      7 East Congress Street, Suite 901
                                      Savannah, GA 31412
                                      (912) 790-1533 Telephone


                                          */s/ Robert M.D. Mercer*
                                      Robert M.D. Mercer
                                      Georgia Bar No. 502317
                                      SCHULTEN WARD TURNER & WEISS LLP
                                      260 Peachtree Street NW, Suite 2700
                                      Atlanta, Georgia  30303
                                      (404) 688-6800  Telephone
                                      (404) 688-6840  Facsimile

                                      *Counsel for Robert H. Barnett as the*
                                      *Liquidation Trustee under the Sea Island*
                                      *Company Creditors Liquidation Trust*

4819-5193-0745, v. 1

**<u>EXHIBIT "1"</u>**

4819-5193-0745, v. 1